942 F.2d 791
 34 ERC 1229
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
The HASSAYAMPA STEERING COMMITTEE, Maricopa County, Arizona,
Plaintiffs-Appellants,
v.
STATE OF ARIZONA, et al., Defendant,
Velsicol Chemical Corporation, Defendant-Appellee,
The HASSAYAMPA STEERING COMMITTEE, Maricopa County,
Plaintiffs-Appellants,
v.
STATE OF ARIZONA, Arizona Department of Health Services,
Arizona Department of Environmental Quality, Anocad Plating
& Painting Co., Inc., Arizona Petroleum, Arizona Petroleum
Contractors and Consultants, Inc., Arizona Sewer Service,
Inc., Bean & Company, Berset Cesspool Service, Best Way
Sewer & Drain Service, Browning-Ferris Industries of
Arizona, Inc., Chemical Waste Management, Inc., Farmers
Agdustries, Inc., Dave Fellars Dump Truck Service, Inc.,
Fred's Pumping Service, Inc., Gowan Company, Karlson
Machine, Karlson Machine Works, Inc., Liquid Air
Corporation, McGraw-Edison Company, Phil's Pumping & Rooter
Service, Rick's Cesspool Service, Rick's Cesspool Service,
Rinchem Company, Union Carbide Corporation, Union
Manufacturing; Universal Waste, Universal Waste Control
Inc., Valley Steel & Supply Company, Velsicol Chemical
Corporation, Wayne Oxygen, Inc., Green Genie Nurseries,
Inc., Defendants-Appellees.
 Nos. 89-16715, 90-16080.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1991.
Decided Aug. 16, 1991.
 
 Before GOODWIN, SCHROEDER and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Between April 1979 and October 1980, several million gallons of liquid hazardous substances and several thousand tons of industrial wastes allegedly were dumped at Hassayampa Landfill in Arizona. In October 1980, Hassayampa Landfill was closed to all hazardous waste disposal. The landfill was later declared a Superfund site pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), 42 U.S.C. § 9605(8).
 
 
 3
 Plaintiffs-appellants, collectively termed "the Hassayampa Steering Committee," are an unincorporated association consisting of several companies[1] and Maricopa County, Arizona. In February 1988, these parties entered into an administrative consent order with the EPA to undertake a remedial investigation and feasibility study in response to the hazardous dumping at Hassayampa Landfill.
 
 
 4
 The Hassayampa Steering Committee then sued some fifty other entities, including the appellees, Velsicol Chemical Co., Union Carbide Corp., and Wayne Oxygen Co., pursuant to 42 U.S.C. § 9607(a)(4)(B). The fifty defendants were named as potentially responsible parties by the EPA but have refused to participate in the sharing of response costs. Hassayampa claims that the defendants disposed of hazardous substances at the landfill, and therefore are jointly and severally liable for response costs. Hassayampa appeals the district court's grant of summary judgment in favor of the three defendants.
 
 VELSICOL
 
 5
 Appellant Hassayampa claims that Velsicol Chemical Co. disposed of warfarin and diphacinone, two rodenticide wastes, at the landfill, and that these substances were "hazardous" as defined by CERCLA. The principal document before the district court in support of Hassayampa's position was a document given to the EPA by Velsicol which described the composition of its waste as including either warfarin, named by the EPA as a hazardous substance, or diphacinone. In response, however, Velsicol submitted an affidavit stating that the waste was all labeled as having only diphacinone as the active ingredient. According to Velsicol:
 
 
 6
 As evidence that Velsicol never manufactured end-use rodenticide containing warfarin, the Court need only look at the labels prepared for the plant's products pursuant to the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"). All such labels were submitted to plaintiffs in discovery in this case. All such labels clearly indicate that diphacinone was the active ingredient in Velsicol's rodenticides. Moreover, if warfarin had ever been used as a rodenticide, plaintiffs would have been able to produce such labels from the EPA, where they are kept on file and available as public documents.
 
 
 7
 Defendant Velsicol's Supplemental Affidavit of Charles Hanson 5-6, p 8. This evidence was not rebutted.
 
 
 8
 The district court therefore correctly concluded that appellant has failed to demonstrate to the court that a genuine issue of material fact exists as to the presence of warfarin in the Velsicol waste.
 
 
 9
 Appellant also claims that the district court erred in holding that diphacinone was not a hazardous substance. Appellant contends that the Arizona Department of Health Services' determination that diphacinone was a hazardous waste was tantamount to an EPA determination that it was a hazardous waste. Appellant cites 42 U.S.C. § 6926(d), which states that any action taken by an authorized state hazardous waste program "shall have the same force and effect as action taken by the Administrator under this subchapter." Such reliance is misplaced, however. Section 6926(d) refers to the state's ability to issue permits for the storage, treatment or disposal of wastes--not a state's ability to determine which materials are hazardous. 42 U.S.C. §§ 6926(b) & (d). Moreover, a state cannot expand the scope of liability under CERCLA. 40 C.F.R. § 271.1(i)(2) ("Where an approved State program has a greater scope of coverage than required by Federal law, the additional coverage is not part of the Federally approved program").
 
 
 10
 The district court correctly concluded that diphacinone was not a hazardous substance as defined by CERCLA. CERCLA defines "hazardous substance" to include any substance designated as such pursuant to certain enumerated federal environmental statutes, or a substance demonstrating any of the specified characteristics of a hazardous waste under section 3001 of the Solid Waste Disposal Act. See 42 U.S.C. § 9601(14) (CERCLA's definition of "hazardous substance"); 42 U.S.C. § 6921 (Solid Waste Disposal Act's provisions for identifying hazardous waste); 40 C.F.R. § 261.20-23 (characteristics of hazardous waste promulgated pursuant to Solid Waste Disposal Act). Appellant has not asserted that diphacinone is listed as a hazardous substance pursuant to any of the enumerated statutes, nor has appellant asserted that diphacinone exhibits any of the specified characteristics of a hazardous substance. Therefore, the district court correctly concluded that diphacinone was not a hazardous substance under CERCLA.
 
 UNION CARBIDE AND WAYNE OXYGEN
 
 11
 Appellant claims that Union Carbide Corporation and Wayne Oxygen Company disposed of lime waste, a byproduct of acetylene gas production, at Hassayampa Landfill in 1979-80. Appellant moved for partial summary judgment against Union Carbide and Wayne, claiming that Union Carbide's and Wayne's own manifests demonstrated that they had disposed of hazardous lime waste.
 
 
 12
 The district court concluded on the basis of affidavits submitted by Union Carbide and Wayne Oxygen that the manifest figures were unreliable and inaccurate. Affidavits of Union Carbide and Wayne employees stated that the manifest figures did not accurately represent actual pH values of the defendants' waste; this testimony was unrebutted.[2] The only actual test results in the record showed pH levels below 12.5, the level set by EPA regulations as the corrosivity level establishing a hazardous substance. See 40 C.F.R. § 261.22.
 
 
 13
 Appellant maintains that the district court committed reversible error in requiring it to prove the toxicity of the waste by using EPA-approved test methods which did not exist at the time of the defendants' release of waste at this site. The regulation which requires the use of an EPA-approved test method, 40 C.F.R. § 261.22, did not become effective until November 19, 1980, see 45 Fed.Reg. 33064, after defendants completed their dumping of lime waste at Hassayampa Landfill. Appellant presents the compelling argument that we should not require data resulting from a test that had not yet been identified at the time of the waste release and established only after the Hassayampa Landfill had been closed.
 
 
 14
 The difficulty with appellant's argument is that the district court's ruling does not depend solely upon the lack of results from an EPA-approved test method. There was no reliable evidence introduced to show that the pH level was greater than or equal to 12.5. We therefore do not need to decide in this appeal whether EPA-approved test results regarding corrosivity must be provided with respect to wastes released prior to the promulgation of the applicable regulation.
 
 
 15
 Finally, appellant challenges the district court's denial of appellant's motion to reconsider and amend the judgment. Specifically, appellant challenges the district court's refusal to consider its belated argument that 40 C.F.R. § 262.11(c) provided an alternative method of determining corrosivity, and the court's refusal to consider new evidence regarding the corrosivity of Wayne Oxygen's waste. We conclude that the district court did not abuse its discretion in denying this motion, based on appellant's failure to present these contentions in a timely manner below and in light of the time and expense already expended by the defendants.
 
 
 16
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Specifically, Alcatel Information Systems, Inc.; AT & T Technologies, Inc.; Digital Equipment Corp.; General Instrument Corp.; Honeywell and Honeywell Bull Inc.; Shell Oil Co.; and W.A. Krueger Co
 
 
 [2]
 The parties agree that the corrosivity of the lime waste is dispositive in determining if it was hazardous under CERCLA. To be corrosive, the lime waste must be "aqueous" and have a pH value greater than or equal to 12.5. 40 C.F.R. § 261.22